UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION


DANIEL DENGLER,

                    Petitioner,

v.                                    Case No. 3:06-cv-50-J-12HTS

WALTER A. MCNEIL,[1]
et al.,

                    Respondents.

_____

**ORDER**

**I. Status**

Petitioner Daniel Dengler, an inmate of the Florida penal system proceeding *pro se*, initiated this action by filing a Petition for Writ of Habeas Corpus (hereinafter Petition) (Doc. #1) on January 18, 2006. Thereafter, he filed an Amended Petition for Writ of Habeas Corpus (hereinafter Amended Petition) (Doc. #18) pursuant to 28 U.S.C. § 2254. Petitioner challenges a 2002 state court (St. Johns County, Florida) judgment of conviction for two counts of first degree murder on the following ground: trial counsel was ineffective for failure to move, during the pretrial

_____

[1] Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Walter A. McNeil is substituted for James R. McDonough as the proper party Respondent having custody over Petitioner.

proceedings, for a dismissal of the Indictment, which was illegally obtained using evidence which was later suppressed.

Respondents filed a Response to Amended Petition (Doc. #20) (hereinafter Response) with exhibits in support of their Response.[2] Petitioner was instructed on how to properly respond to a motion to dismiss and/or for summary judgment. <u>See</u> Court's Order to Show Cause and Notice to Petitioner (Doc. #9). Petitioner has not replied, but has had a sufficient amount of time to do so. This case is now ripe for review.

## II. Procedural History

On May 8, 2000, Petitioner Dengler was charged, by Indictment, in St. Johns County, Florida, with two counts of first degree murder in violation of Fla. Stat. § 782.04(1)(a)1. Ex. A at 1. The specifications of each first degree murder charge read:

> In that DANIEL J. DENGLER, on or about the 24th day of April, 2000, within St. Johns County, Florida, did then and there unlawfully, while acting from a premeditated design to effect the death of Dorothy Scott or any other human being, kill and murder the said Dorothy Scott, a human being, by beating her to death.
>
> . . . .
>
> In that DANIEL J. DENGLER, on or about the 24th day of April, 2000, within St. Johns County, Florida, did then and there unlawfully, while acting from a premeditated design to effect the death of Coit Mulligan or

---

[2] Respondents' exhibits will be hereinafter referred to as "Ex."

> any other human being, kill and murder the
> said Coit Mulligan, a human being, by beating
> him to death.

Id.

A jury trial before the Honorable Robert K. Mathis was held on May 20-23, 2002.  Ex. B, Transcript of the Jury Trial Proceedings (hereinafter Tr.) at 1-528.  The evidence at the trial established that Petitioner Dengler murdered the two victims.  Petitioner admitted to committing the murders, and DNA from one of the victims was found on a sweatshirt found in the trunk of Petitioner's taxi cab.  Tr. at 326, 327, 335, 339, 358-60, 457, 458.  Petitioner was found guilty as charged.  Ex. A at 178.  On June 6, 2002, Petitioner was adjudicated guilty as charged and sentenced to a term of life imprisonment with the twenty-five year mandatory minimum sentence.  Id. at 203-07.

On appeal, Petitioner, through counsel, raised one issue: the trial court erred in instructing the jury on excusable and justifiable homicide.  Ex. C at 1-27, Initial Brief of Appellant. The State filed an Answer Brief.  Id. at 28-39, Answer Brief of Appellee.  On April 1, 2003, the appellate court per curiam affirmed without issuing a written opinion.  Dengler v. State, 842 So.2d 128 (Fla. 5th DCA 2003); Ex. C at 40.  The mandate was issued on April 21, 2003.  Ex. C at 43.  Petitioner's April 22, 2003, *pro se* motion for rehearing was denied on May 5, 2003.  Id. at 41-42, 44.

On or about April 20, 2004, Petitioner filed a *pro se* state petition for writ of habeas corpus, claiming that his appellate counsel was ineffective (1) for failing to obtain the complete record on appeal to raise the issue contained within the missing grand jury proceedings (that the four detectives (Randy McCullough, Michael Quintieri, Robert Lindsey and J. Lawing) gave testimony during the grand jury proceedings concerning the details surrounding Petitioner's alleged confession, which was later suppressed by Judge Mathis), and (2) for failing to raise on appeal that the trial court erred in denying Petitioner's motion for judgment of acquittal. Ex. D at 1-20. The State was ordered to file a response and did file a response. Id. at 33, 34-41. On June 9, 2004, the appellate court denied the petition. Id. at 69. Petitioner's motion for extension of time was denied on June 15, 2004, and his motion to recall mandate was denied on July 13, 2004. Id. at 70-79.

On or about August 4, 2004, Petitioner filed a *pro se* motion for post conviction relief pursuant to Fla. R. Crim. P. 3.850, raising the following claims: (1) counsel was ineffective for failing to pursue a defense of excusable homicide in the face of the record evidence of sudden combat; (2) counsel was ineffective for failing to file a pretrial motion to dismiss the grand jury Indictment; and (3) counsel was ineffective for failing to object to the admission of inadmissible hearsay evidence during the trial.

4

Ex. E at 1-15.   The trial judge summarily denied the second and third claims and ordered an evidentiary hearing on the first claim of ineffectiveness.   _Id_. at 26-31.   On January 14, 2005, an evidentiary hearing was held.   _Id_. at 65-149.   On January 19, 2005, the trial judge entered a written order denying the remaining ground one.   _Id_. at 45-48.

Petitioner appealed.   _Id_. at 50.   Petitioner, through counsel, filed an Initial Brief, claiming the trial judge erred in summarily denying grounds two and three because the trial judge failed to provide record attachments to the order.   Ex. F at 1-13.   In the brief, he stated that "there is no merit to an appeal on any of the issues that were the subject of the evidentiary hearing."   _Id_. at 5-6.   The State filed an Answer Brief.   _Id_. at 14-20.   On December 6, 2005, the appellate court per curiam affirmed without issuing a written opinion.   _Dengler v. State_, 916 So.2d 809 (Fla. 5th DCA 2005); Ex. F at 21.   The mandate was issued on December 28, 2005.   Ex. F at 22.   Petitioner's _pro se_ motion for rehearing and/or motion for written opinion was denied on January 6, 2006.   _Id_. at 23-26.

Petitioner Dengler's Petition was provided to the prison officials at Baker Correctional Institution for mailing to this Court on January 13, 2006, and as a result thereof, the Petition

was filed on January 18, 2006.[3]  Thus, the Petition is timely filed within the one-year period of limitations.  See 28 U.S.C. § 2244(d); Response at 3-4.

### III. Evidentiary Hearing

"In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 127 S.Ct. 1933, 1940 (2007) (citation omitted).  "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id.

This Court has carefully reviewed the record and concludes Petitioner is not entitled to an evidentiary hearing.  The pertinent facts of the case are fully developed in the record before the Court.  Smith v. Singletary, 170 F.3d 1051, 1054 (11th Cir. 1999).  Thus, the Court can "adequately assess [Petitioner's] claim[s] without further factual development." Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003), cert. denied, 541 U.S. 1034 (2004).  Therefore, an evidentiary hearing will not be conducted.

---

[3] Giving Petitioner the benefit of the mailbox rule, this Court finds that the Petition was filed on the date Petitioner handed it to the prison authorities for mailing to this Court (January 13, 2006).  See Houston v. Lack, 487 U.S. 266, 276 (1988).

## IV.  Standard of Review

Since this action was filed after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996, Pub.L. 104-132, 110 Stat. 1214 (hereinafter AEDPA), April 24, 1996, the Court will analyze Petitioner's claims under 28 U.S.C. § 2254(d), as amended by AEDPA.  Nelson v. Alabama, 292 F.3d 1291, 1294-95 (11th Cir. 2002), cert. denied, 538 U.S. 926 (2003); Fugate v. Head, 261 F.3d 1206, 1215 n.10 (11th Cir. 2001), cert. denied, 535 U.S. 1104 (2002); Wilcox v. Florida Dep't of Corr., 158 F.3d 1209, 1210 (11th Cir. 1998), cert. denied, 531 U.S. 840 (2000).  Under AEDPA, however, the review "is 'greatly circumscribed and highly deferential to the state courts.' Crawford v. Head, 311 F.3d 1288, 1295 (11th Cir. 2002)." Stewart v. Sec'y, Dep't of Corr., 476 F.3d 1193, 1208 (11th Cir. 2007).

The Eleventh Circuit has explained this deferential review:

> [Section] 2254(d) allows federal habeas relief for a claim adjudicated on the merits in state court only if the state court adjudication resulted in a decision that was: "(1) . . . contrary to, or involved an unreasonable[4] application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) . . . based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d);

---

[4] "The question under AEDPA is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable - a substantially higher threshold." Schriro v. Landrigan, 127 S.Ct. 1933, 1939 (2007) (citing Williams v. Taylor, 529 U.S. 362, 410 (2000)).

> Marquard, 429 F.3d at 1303. The phrase
> "clearly established Federal law," as used in
> § 2254(d)(1), encompasses only the holdings,
> as opposed to the dicta, of the United States
> Supreme Court as of the time of the relevant
> state court decision. See Carey v. Musladin,
> 549 U.S. —, 127 S.Ct. 649, 653, 166 L.Ed.2d
> 482 (2006) (citing Williams v. Taylor, 529
> U.S. 362, 412, 120 S.Ct. 1495, 1523, 146
> L.Ed.2d 389 (2000)); Osborne v. Terry, 466
> F.3d 1298, 1305 (11th Cir. 2006).

Stewart, 476 F.3d at 1208-09.

"AEDPA also requires federal habeas courts to presume the correctness of state courts' factual findings unless applicants rebut this presumption with 'clear and convincing evidence.' §2254(e)(1)." Schriro, 127 S.Ct. at 1939-40 (footnote omitted). This presumption of correctness applies equally to factual determinations made by state trial and appellate courts." Bui v. Haley, 321 F.3d 1304, 1312 (11th Cir. 2003) (footnote omitted) (citing Sumner v. Mata, 449 U.S. 539, 547 (1981)).

Finally, for a state court's resolution of a claim to be an adjudication on the merits, so that the state court's determination will be entitled to deference for purposes of federal habeas corpus review under AEDPA, all that is required is a rejection of the claim on the merits, not an opinion that explains the state court's rationale for such a ruling. Wright v. Sec'y for the Dep't of Corr., 278 F.3d 1245, 1255 (11th Cir. 2002), cert. denied, 538 U.S. 906 (2003). See Peoples v. Campbell, 377 F.3d 1208, 1227 (11th Cir. 2004), cert. denied, 545 U.S. 1142 (2005). Thus, to the

8

extent that Petitioner's claim was adjudicated on the merits in the state courts, it must be evaluated under the new § 2254(d).

## V. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants effective assistance of counsel. That right is denied when a defense counsel's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citations omitted). The Eleventh Circuit recently captured the essence of an ineffectiveness claim:

> The clearly established federal law for ineffective assistance of counsel claims was set forth by the U.S. Supreme Court in Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). To establish a claim of ineffective assistance of counsel, first, "the defendant must show that counsel's performance was deficient . . . [which] requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id. at 687, 104 S.Ct. at 2064. Second, the defendant must show that counsel's deficient performance prejudiced him. Id. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694, 104 S.Ct. at 2068.

Gaskin v. Sec'y, Dep't of Corr., 494 F.3d 997, 1002 (11th Cir. 2007). "Establishing these two elements is not easy: 'the cases in which habeas petitioners can properly prevail on the ground of

ineffective assistance of counsel are few and far between.'"  <u>Van Poyck v. Florida Dep't of Corr.</u>, 290 F.3d 1318, 1322 (11th Cir. 2002) (per curiam) (citations and footnote omitted), <u>cert</u>. <u>denied</u>, 537 U.S. 812 (2002), 537 U.S. 1105 (2003).

The Eleventh Circuit stated:

> The Supreme Court has established certain principles and presumptions to guide our review of ineffectiveness claims under the flexible, case-specific standards of <u>Strickland</u>.  We engage only in a "highly deferential" review of counsel's performance and "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065 (quotation omitted).  As a result of this presumption, a petitioner must show "that no competent counsel would have taken the action that his counsel did take." <u>Chandler v. United States</u>, 218 F.3d 1305, 1315 (11th Cir. 2000) (en banc).  Thus, "where the record is incomplete or unclear about [counsel]'s actions, we will presume that he did what he should have done, and that he exercised reasonable professional judgment." <u>Id</u>. at 1314 n. 15 (quoting <u>Williams v. Head</u>, 185 F.3d 1223, 1228 (11th Cir. 1999)).  Moreover, because the standard is an objective one, trial counsel's admission that his performance was deficient "matters little." <u>Id</u>. at 1315 n.16.  We must also avoid "the distorting effects of hindsight" and evaluate the reasonableness of counsel's performance from the perspective of counsel at the time the acts or omissions were made.  <u>Strickland</u>, 466 U.S. at 689, 104 S.Ct. at 2065.

<u>Jennings v. McDonough</u>, 490 F.3d 1230, 1243-44 (11th Cir. 2007).

## VI. Findings of Fact and Conclusions of Law

Petitioner Dengler claims that trial counsel was ineffective for failure to move, during the pretrial proceedings, for a dismissal of the Indictment, which was illegally obtained using evidence which was later suppressed. Specifically, in the Amended Petition, Petitioner states that trial counsel should have moved to dismiss the Indictment, charging him with two counts of first degree murder, because prejudicial statements he made during an interview with law enforcement were used to obtain the Indictment and those statements were later suppressed. As acknowledged by the parties, Petitioner raised this claim in his Rule 3.850 motion (as ground two). Amended Petition at 7; Response at 5. In denying this ground on the merits, the trial court identified the two-prong Strickland ineffectiveness test as the controlling law and stated in pertinent part:

> In his second count, the defendant alleges that his attorney was ineffective for failing to move pre-trial for a dismissal of the indictment against him. He claims that the indictment was illegally obtained using evidence which was later suppressed by the Court. Had the counsel moved pre-trial to dismiss the indictment, the Defendant claims the trial court would have granted such a motion, and released the Defendant from custody. Florida Rule of Criminal Procedure 3.140(o)[5] governs dismissal of indictments.

---

[5] Fla. R. Crim. P. 3.140(o) provides:

> **Defects and Variances**. No indictment or information, or any count thereof, shall be

11

Under the Rule, an indictment shall not be dismissed "unless the court is of the opinion that the indictment or information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense . . . [.]" See also: <u>York v. State</u>, 432 So.2d 51 (Fla. 1983); <u>State v. Casesa</u>, 392 So.2d 1022 (Fla. 5th DCA 1981). The indictment in the instant case was in no way vague or indistinct. It fully advised the Defendant of the charges pending against him and the particulars of those charges, and allowed him to prepare a thorough defense. Factually, the current case is indistinguishable from <u>State v. Spillane</u>, 419 So.2d 753 (Fla. 2nd DCA 1982), in which the district court reversed the trial court's dismissal of an indictment which the police had gained after engaging in deliberate sixth amendment violations. Had counsel in the current case moved to dismiss the indictment, the trial court certainly would not have granted the motion. Counsel, then, cannot be said to have been deficient for failing to file a motion that was certain to fail. Further, since this court would have denied any such motion that was filed, the Defendant has failed to show that he was prejudiced by his counsel's alleged deficiency.

Ex. E at 28-29.

---

dismissed or judgment arrested, or new trial granted on account of any defect in the form of the indictment or information or of misjoinder of offenses or for any cause whatsoever, unless the court shall be of the opinion that the indictment or information is so vague, indistinct, and indefinite as to mislead the accused and embarrass him or her in the preparation of a defense or expose the accused after conviction or acquittal to substantial danger of a new prosecution for the same offense.

As noted previously, upon Petitioner's appeal, the appellate court per curiam affirmed the trial court's order. Accordingly, the claim was rejected on the merits by the state trial and appellate courts. Thus, there are qualifying state court decisions. This ground should be addressed applying the deferential standard for federal court review of state court adjudications, as required by AEDPA. Upon a thorough review of the record and the applicable law, it is clear that Petitioner is not entitled to relief on the basis of this claim because the state courts' adjudications of the claim were not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and were not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.

This Court also finds this ground to be without merit. In evaluating the performance prong of the Strickland ineffectiveness inquiry, there is a strong presumption in favor of competence. The inquiry is "whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." Strickland v. Washington, 466 U.S. 668, 690 (1984). "[H]indsight is discounted by pegging adequacy to 'counsel's perspective at the time' . . . and by giving a 'heavy measure of deference to counsel's judgments.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (citations omitted). Thus,

Petitioner must establish that no competent attorney would have taken the action that counsel, here, chose. <u>United States v. Freixas</u>, 332 F.3d 1314, 1319-20 (11th Cir. 2003). Here, counsel's performance was not deficient.

Petitioner's trial counsel (Renee H. Peshek) filed a Motion to Suppress Confession/Admission and set forth the following facts in support of the motion:

     1.   On April 24, 2000[,] at 1745 officers of the Jacksonville Beach Police Department were dispatched to the Freebird Café in Jacksonville to take the Defendant into custody for the St. Johns County Sheriff's Office. The Jacksonville Beach Officers handcuffed the Defendant and transported him to their police department.

     2.   Detectives from the St. Johns County Sheriff's Office met the Defendant at the Jacksonville Beach Police Department and requested he come to St. Augustine. The Defendant agreed and Deputies Logan and McGinnis were dispatched to transport him. Both Detective McCullough and Detective M. Quintieri stated in their depositions that the Defendant had an odor of alcohol about his person when they met him in the holding area of the Jacksonville Beach Police Department. Detective McCullough also stated that the Defendant had a disheveled appearance and admitted to having several drinks.

     3.   Deputy Logan testified in his deposition that while transporting the Defendant to St. Augustine, the Defendant had a strong odor of alcohol about his person and appeared from his speech and mannerisms to be intoxicated. The other transporting officer, Deputy McGinnis, testified that the Defendant said he had had several Long Island Ice Teas to drink while at the Freebird Café.

4. Once at the St. Johns County Sheriff's Office, the Defendant was interviewed by Detective McCullough and Detective M. Quintieri. This interview was monitored from another room by Detective Linds[e]y and Detective Lawing. The Detectives thought they were videotaping the interview, but due to the incorrect use of new video equipment, they did not obtain a video of the interview. There was no attempt made to audiotape the interview. No written statement was taken from the Defendant. Therefore, there is no accurate record of the interview of the Defendant and the statements he allegedly made.

5. Detective McCullough read the Defendant his constitutional rights (Miranda), however he cannot recall if he had the Defendant sign a written waiver stating he understood these rights. Detective M. Quintieri stated in his deposition that he thought a written waiver was obtained but no copy of such was provided to the Defendant[,] and the Assistant State Attorney handling the case, Chris France, could not find a copy of such a document in his case file.

6. According to Detective Lawing, at one point in the interview the Defendant was asked how he defended himself and the Defendant's response was "not without counsel." The Defendant was not questioned any further concerning the issue of counsel. Instead, the Detectives went into another line of questioning. There is no definitive indication of when this mention of counsel was made by the Defendant and it is not mentioned at all by the interviewing Detectives, McCullough and M. Quintieri, nor the other monitoring detective, Lindsey, in their accounts of the interview.

7. According to the accounts of the four Detectives, the Defendant made numerous and varying confessions/admissions during the interview. Each Detective has a different recollection of what exactly the Defendant

15

> said. Detective Lindsey stated in deposition
> that he has no independent recollection of the
> statements, and relied totally on his
> affidavit.

Ex. A at 71-72.  Thus, counsel argued that Petitioner "was too intoxicated with alcohol to knowingly and voluntarily waive his right to remain silent." Id. at 73.  Counsel further claimed that the failure of law enforcement to obtain a signed waiver form acknowledging that he was making a voluntary, intelligent and knowing waiver was also a factor to be considered in determining whether the confession is voluntary.  Id.  Counsel concluded that, since it is unclear when in the interview Petitioner made his equivocal request for counsel, the entire interview should be suppressed.  Id.

On May 20, 2002, Judge Mathis issued an order, stating:

> **THIS CAUSE** came on to be heard upon the
> Defendant's motion to suppress statements.
> The Defense in this case seeks suppression of
> confessions based on two premises. The first
> allegation is that the Defendant was so
> intoxicated that he was unable to understand
> his constitutional rights and intelligently
> waive those rights. The second point is that
> the Defendant, at one point in the interview,
> made a request for counsel.
>
> The Court finds that although the
> evidence is clear that on April 24th, 2000,
> the Defendant was taken into custody in Duval
> County, Florida, by Jacksonville Beach Police
> Department, and that prior to be[ing] taken
> into custody, the Defendant had been eating
> and drinking alcoholic beverages at the
> Freebird Café in Jacksonville. There is
> evidence in this case that the Defendant was
> in fact, under the influence of alcoholic

16

beverages, but that the testimony of all the witnesses in this case, convinces the Court that the Defendant was not so intoxicated as to be unable to understand the import of his constitutional rights, or to voluntarily waive those rights. The testimony of the officers makes clear that the Defendant was in fact, advised of his constitutional rights and made a free and voluntary waiver of those rights.

More disturbing is the allegation that the Defendant made an equivocal request for counsel. In this case, unfortunately, the video tape equipment did not work. Two officers [(Detective McCullough and Detective Quintieri)] of the St. Johns County Sheriff's Office were interviewing the Defendant while two other officers [(Detective Lindsey and Detective Lawing)] were video taping the interview from a separate room. Although they were able to monitor the interview, and in fact took notes with time lines, the video camera did not record the interview. Officers Lawing and Quintieri, both testified that at one point in the interview, when the Defendant was asked how he defended himself, the Defendant said "not without counsel". It is clear that this was an equivocal request for an attorney. No further questioning was made concerning whether or not the Defendant wanted an attorney at that time. No inquiry was made of the Defendant as to his wishes, and no further conversations were had concerning an attorney. Thereafter, the Defendant made numerous admissions and confessions. It is almost impossible for the Court to determine from the evidence, which statements were made prior to the request for counsel, and which were made post request. The testimony of the officers is rather confusing, in that the two officers in fact, that took the Defendant's statement, did not take any notes. (The Court presumes they were going to rely on the video taped statement.) It is clear from the evidence that any statement made after the Defendant made the equivocal request for counsel, must be suppressed.

17

It is therefore:

**ORDERED AND ADJUDGED** that only those statements made prior to the Defendant's request for counsel may be admitted. It is also clear that the officer who has the best memory and notes concerning this matter is Detective Lawing, and the Court will rely on his notes in determining which statements may be admitted. The Court further finds that any statements made to other officers, prior to this time, are admissible, as none of those statements were custodial interrogations, but rather were voluntary statements of the Defendant.

Id. at 158-59.

Thus, while Petitioner claims that the trial court issued an order "suppressing the prejudicial admission used to indict" him, it is clear that Judge Mathis only partially granted the motion to suppress.  Amended Petition at 6(a); Ex. A at 159.  Judge Mathis suppressed only those statements made to Detective McCullough and Detective Quintieri *after* Petitioner made the equivocal request for counsel.  Those statements made *prior* to Petitioner's request for counsel were ruled admissible. Further, any statements made to "other officers, [(for example, Deputies Logan and McGinnis, the transporting officers)] prior to this time," were ruled admissible since "none of those statements were custodial interrogations, but rather were voluntary statements of the Defendant."  Ex. A at 159.

18

Thus, it is clear that Petitioner was not entitled to dismissal of the Indictment.[6] Petitioner received the remedy to which he was entitled: suppression of those statements made to Detective McCullough and Detective Quintieri <u>after</u> Petitioner made the equivocal request for counsel. The filing of a motion to dismiss the Indictment on the basis he argues would have been an unsuccessful act, as the court would have properly denied the motion. Thus, counsel's performance was not deficient for failing to file a motion to dismiss.

Additionally, as previously noted, only some of the statements made by Petitioner were suppressed. Thus, at trial, numerous statements made by Petitioner were admitted, and therefore the jury

---

[6] <u>United States v. Morrison</u>, 449 U.S. 361 (1981) (holding that absent demonstrable prejudice or a substantial threat thereof, the dismissal of an Indictment is inappropriate even though there has been a deliberate Sixth Amendment violation); <u>Cummings v. State</u>, 715 So.2d 944, 947 (Fla. 1998) (finding no merit to Cummings' argument that it was error not to dismiss the Indictment because of perjured grand jury testimony when the State possessed other evidence from which his Indictment could have resulted and since there was sufficient evidence to show probable cause to indict Cummings for the murder); <u>State v. Greco</u>, 479 So.2d 786, 790 (Fla. 2nd DCA 1985) ("An indictment or information should not be dismissed unless it is so vague, indistinct, and indefinite as to mislead the defendant and embarrass him in the preparation of his defense or expose him to double jeopardy" and noting that "a charging document which follows the statute will be upheld as long as it reasonably informs the defendant of the actions with which he is charged"); <u>State v. Spillane</u>, 419 So.2d 753, 754 (Fla. 2nd DCA 1982) (concluding that the appellee had failed to demonstrate the kind of prejudice which would warrant the abatement of prosecution against him, noting that the court can suppress any improperly obtained information which might tend to incriminate him and stating: "The point is that the sanction should be designed to make appellee whole, not to provide him with a windfall.").

heard and assessed those statements in determining whether he was guilty of the two charged offenses. During the transportation of Petitioner Dengler to St. Augustine by Deputies Logan and McGinnis, Petitioner made several spontaneous statements to the officers. Tr. at 321, 324, 326 (stating they got what they deserved), 327 (stating he would have committed the crime at another time if he had known the officers were in training). Detective Lindsey, who monitored Petitioner from the videotape room, described Petitioner's actions:

> He was very distraught. He was sobbing, crying, kind of whining and he had placed his face and kind of his body over the table, leaning onto the table crying and sobbing.
>
> . . . .
>
> He raised back and he kind of had his hands like this on his face and he said, It's over; he said, I killed them; oh God, that's [sic] is what he said.

Id. at 334-35.

Another witness, Ronnie Barton Lewis (who was paid by Mr. Byron to move Petitioner's trailer from Ms. Scott's property to Ms. Respess' property) testified that he was incarcerated at the jail with Petitioner Dengler in May of 2001. Id. at 337. When Mr. Lewis told Petitioner that he was the one who moved the trailer, Petitioner told Mr. Lewis that, as big as he is, he would have had to "gut" him because he could not beat him to death. Id. at 338. Mr. Lewis further testified:

>        [Dengler] just mentioned that they [(the
>        victims)] got what they deserved.  He spit on
>        the ground and said they deserved what they
>        got; scum of the earth.

Id. at 339.

Further, Leonard Melynchenko, a friend of the victims (Dorothy Scott and Coit Mulligan), testified that, on April 24th (the day of the murders) just before noon, Petitioner Dengler called him on his cell phone.

>        He told me that I don't have to worry
>        about Dorothy any more, that he just killed
>        her and Coit too, and then he hung up.
>
>        . . . .
>
>        I was -- I was stunned, I mean just
>        shocked.  I had to call him back, What did you
>        do; what are you talking about?  He told me
>        again that he killed them and hung up on me
>        again.
>
>        . . . .
>
>        But at 5:00 o'clock, roughly around 5:00,
>        5:30, he left me a message.  I didn't receive
>        that message because the area I was at, the
>        signal wasn't good, so he left me a message on
>        my cell answering machine.  And the message
>        that he left me, I still remember it to this
>        day, verbatim, said, All my property is all
>        under scrutiny; you and all you inklings out
>        there that I haven't gotten to you yet, you
>        ought to be thinking about it.

Id. at 358-60.  After the second phone call, Mr. Melynchenko called the police.  Id. at 360.

And, as noted previously, a sweatshirt found in the trunk of Dengler's taxi cab had DNA from one of the victims on it.  Id. at

457, 458.   There was also evidence presented, through other witnesses, that the victims and Petitioner, prior to the murders, had been disputing the issue of his trailer on Ms. Dorothy Scott's property.  Id. at 204-06, 266-67, 273.  Additionally, Petitioner's friend (Mr. Delow) testified that Petitioner met him to sign over his van and trailer; Petitioner had explained to Delow that he would not need the van and trailer for awhile since he had gotten into some trouble and would be turning himself into the police. Id. at 222-27.  And, Susan Cade (a neighbor of the victims) testified that she saw a cab near the crime scene on April 24th between 10:00 a.m. and 11:00 a.m.  Id. at 228-30.  She remembered it because it was unusual to see a "Yellow Cab" in the area when the only cab company she had ever seen in that area was "Ancient City Cabs."  Id. at 229-30.  The above evidence was more than sufficient to not only sustain a conviction for the two counts of first degree murder, but also sufficient to base an Indictment upon which the grand jury could return.

Even assuming arguendo deficient performance by defense counsel, Petitioner has not shown prejudice.  Petitioner has not shown that a reasonable probability exists that the outcome of the case would have been different if his lawyer had given the

assistance that Petitioner has alleged he should have provided.[7] Thus, the ineffectiveness claim is without merit.

For all of the previously-stated reasons, the Amended Petition will be denied, and this case will be dismissed with prejudice.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.   The Amended Petition (Doc. #18) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE.**

2.   The Clerk of the Court shall enter judgment denying the Amended Petition and dismissing this case with prejudice.

3.   The Clerk of the Court shall close this case.

**DONE AND ORDERED** at Jacksonville, Florida, this ___24th___ day of September, 2008.

HOWELL W. MELTON
United States District Judge

sc 9/15
c:
Daniel Dengler
Ass't Attorney General of Record

---

[7] See Zamora v. State, 422 So.2d 325, 327-28 (Fla. 3rd DCA 1982) (stating "it cannot be successfully argued that the failure to seek dismissal of the indictment was an error which would ultimately affect the outcome of the proceedings" since any subsequent grand jury would have re-indicted the petitioner).